## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CAROL ANN RIVETTE,**

        **Plaintiff,**        **CIVIL ACTION NO. 13-cv-10177**

    **vs.**

                          **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

### REPORT AND RECOMMENDATION

Plaintiff Carol Rivette seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 14).  The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.**    **RECOMMENDATION:**

The Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of April 26, 2010, alleging that she had been disabled since August 6, 2009, due to pain throughout her body and an inability to concentrate due to the severe pain. (*See* TR 20, 22.) The Social Security Administration denied benefits. (*See* TR 22.) Plaintiff requested a *de novo* hearing, which was held on April 12, 2011, before Administrative Law Judge (ALJ) Jessica Inouye, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 20-33.) The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions; Plaintiff filed a Response to Defendant's Motion (docket no. 16).

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was 49 years old at the time of the administrative hearing and 48 years old at the time of her alleged onset. (*See* TR 44.) Plaintiff testified that she had attended "a couple years" of college but had not earned a college degree. (TR 45.) At the time of the hearing, she lived with her husband and her 14-year-old son. (TR 45.) Plaintiff told the ALJ that she was not working and that she had not worked since August 6, 2009, due to "chronic pain, constant muscle pain, joint pain, sometime (sic) to the point where the only way [she could] get relief [was] to lie down or take . . . pain medications." (TR 49.) Plaintiff added that she also had "debilitating" migraines and peripheral neuropathy that caused pain in her legs. (TR 49.) She acknowledged, however, that after she stopped working, her symptoms improved somewhat, but whenever she attempted to return to work, her symptoms would return. (TR 58-60.) Before she stopped working in 2009, Plaintiff had

spent 20 years working for a retail chain store as a sales floor team leader.  (TR 46.)

Plaintiff testified that to deal with her pain, she had to lay down two or three times throughout the day for 30 to 45 minutes, or sometimes a couple of hours.  (TR 50.)  She also took Gabapentin to help her sleep and Tramadol to ease her pain, although she only took the Tramadol when she "absolutely need[ed] it" for her migraines or her severe back pain.  (TR 50.)  She told the ALJ that she had back pain every day, but it was only "to the point where [she] need[ed] to be not doing activities" two or three times a week.  (TR 50.)  With regard to her headaches, Plaintiff testified that she had pain every day, but her "incapacitating" migraines would only come on from time to time.  (TR 51.)  She told the ALJ that she had been laid up in bed twice in the three weeks leading up to the hearing for a total of three-and-a-half days.  (TR 52.)  Plaintiff also testified that in addition to her primary medications, she had tried Methotrexate and folic acid for her arthritis and joint pain, but they caused problems with her liver enzymes.  And at the time of the hearing, she was doing daily knee exercises and stretches.  (TR 52.)  Plaintiff further testified that she had chronic problems with her spine, which had "shifted."  (TR 58-59.)

Plaintiff testified that she was unable to spend a lot of time kneeling or crouching and that her doctor had restricted her from performing these activities.  (TR 54.)  She told the ALJ that she could sit for about 30 minutes before she would have to move but that she could return to sitting after about 15 to 20 minutes.  (TR 54.)  She further told the ALJ that she could stand for about 15 to 30 minutes before she would have to sit or lay down.  (TR 54-55.)  She added that she could walk for about 20 to 30 minutes as well.  (TR 55.)  Plaintiff also testified that the joints in her hands would become sore, so she could not cut with scissors or type for more than 20 minutes.  (TR 55.)  She noted, however, that when a "flare-up" wasn't particularly bad, if she took a 20- to 30-minute break, she could return to her previous activity.  (TR 55-56.)  Plaintiff testified that she used to take

3

Motrin for her pain, but it caused problems with her liver enzymes as well, so at the time of the hearing, she was using heating pads and ice to relieve her joint and muscle pain. (TR 56.) She told the ALJ that she could lift and carry "approximately 10 pounds, maybe a little over." (TR 62-63.)

With regard to her daily activities, Plaintiff testified that she would usually wake up in the morning in pain and "walk around for a little while trying to loosen up." (TR 56-57.) She stated that she would then take a hot shower and do her knee exercises and stretches, after which she would sit down and rest. (TR 57.) Plaintiff noted that she would also make sure her son was up and ready for school, but he generally got ready on his own. (TR 57.) Plaintiff told the ALJ that after her son left for school, she would try to do some small chores around the house while she still had some energy, and then she would go lay down. (TR 57-58.) Plaintiff testified that her son did the dishes, but she would unload them from the dishwasher, her son did the general household cleaning and took out the trash, and her son would go with her to the grocery store to push the cart and help her load and unload groceries. (TR 60-61.) She testified that her husband did the yard work and the majority of the laundry. (TR 61.) She told the ALJ that she likes to read, listen to music, and watch movies and that she would visit family and go to church. (TR 62.)

### B. Medical Record

Plaintiff sets forth a brief procedural history and discusses the ALJ's basis for denying her benefits, but she does not directly discuss her medical record. (Docket no. 10 at 6-7.) Defendant's account of Plaintiff's medical history is largely consistent with the ALJ's discussion of her medical record except that Defendant's account of the record includes almost solely the evidence in support of Defendant's position. (*See* docket no. 14 at 6-13) Therefore, the Court hereby incorporates by reference the medical record as set forth in the ALJ's opinion. (TR 25-31.) The Court has, however,

4

conducted an independent review of Plaintiff's medical record and will incorporate comments and citations as necessary throughout this Report and Recommendation.

      **C.**      **The Vocational Expert**

The ALJ first asked the VE to consider a hypothetical person of Plaintiff's age, education, and past work experience who was limited to light work but required a sit/stand option. (TR 69.) The ALJ added that this person could stand or walk for up to 30 minutes at a time and (with normal breaks) for up to four hours in an eight-hour day. The ALJ further added that this person could sit for up to an hour at a time and (with normal breaks) for up to six hours in an eight-hour day. (TR 70.) The ALJ also added that this person could perform bilateral manual dexterity for both gross and fine manipulation and handling and reaching, but could only perform bilateral fine manipulation frequently. (TR 70.) The ALJ asked the VE to assume that this person could only perform postural activities, including climbing, balancing, stooping, crouching, kneeling, and crawling, occasionally. And finally, the ALJ added that this person could not climb rope or scaffolds. (TR 70.) The VE testified that such an individual could not perform Plaintiff's past relevant work, but such a person could perform work at the sedentary level as an order clerk or a telephone solicitor – totaling approximately 3,000 jobs in the State of Michigan. (TR 70.) The ALJ reminded the VE that she had only limited the individual to light work, at which time the VE testified that such a person could perform work as a checker inspector (1,800 jobs) or "in an office setting" (2,000 jobs). (TR 71.)

The ALJ then asked the VE to assume that the same hypothetical person was also limited to work that was low stress with occasional decision making and occasional changes in the work place. (TR 71.) And the ALJ also asked the VE to assume that this person's bilateral fine manipulation was reduced from "frequently" to "occasionally." (TR 72.) The VE testified that such a person could only work as a sedentary level surveillance system monitor, with approximately 500 such jobs

in Michigan. (TR 72.)

The ALJ then asked the VE to assume that this hypothetical person would be absent at least two days per week; the VE testified that such a person would be precluded from all jobs. (TR 73.) The ALJ then asked the VE if a person would be precluded from work if she required three 45-minute rest breaks each day. (TR 73.) The VE testified that such a restriction would eliminate all jobs. (TR 73.)

### IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2014; that she had not engaged in substantial gainful activity since August 6, 2009, her alleged onset date; and that she had the following severe impairments: seronegative arthritis, degenerative disc disease, peripheral neuropathy, fibromyalgia, polymyalgia, and headaches. (TR 22.) The ALJ further found that although Plaintiff alleged impairments related to left shoulder pain, pain and swelling in her left knee, scoliosis, and an inability to concentrate, these impairments were not severe. (TR 22-24.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 24.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had the ability to perform sedentary work with the following additional limitations:

> [C]laimant must have the option to sit or stand at will. She is able to stand up to 30 minutes at a time and walk up to 30 minutes at a time. With normal breaks, the claimant is able to stand and/or walk up to a total of four hours in a normal eight-hour workday. The claimant retains the ability to sit up to an hour at a time, for up to a total of six hours in a normal eight-hour workday. The claimant retains the ability to perform tasks requiring bilateral manual dexterity for both gross and fine manipulation, handling, and reaching. Her ability to perform bilateral fine manipulation is reduced to frequent. The claimant is able to perform occasional postural activities, including climbing, balancing, stooping, crouching, kneeling, and crawling. She must not climb ladders, ropes, or scaffolds.

(TR 24-31.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 31-32.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 6, 2009, through the date of the ALJ's decision. (TR 32-33.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in

conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because the ALJ erred when she (1) failed to give the opinion of Plaintiff's treating physician, Dr. O'Brien, controlling weight, and (2) disregarded the VE's testimony.[1] (*See* docket no. 10 at 8-15.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v.*

---

[1]To the extent Plaintiff argues that the ALJ disregarded the VE's testimony, Plaintiff argues that the VE "opined there are no jobs that Plaintiff could perform within the medical restrictions of Dr. O'Brien, which should have been adopted by the ALJ." (Docket no. 10 at 15.) Thus, Plaintiff's argument is dependant on a finding that the ALJ erred when she did not fully adopt Dr. O'Brien's opinions. This argument need not be addressed independently. That is, if the ALJ erred in her application of the treating-physician rule, Plaintiff's vocational argument is moot because the matter must be reversed or remanded. If, however, the ALJ did not err in applying the treating-physician rule, Plaintiff's vocational argument fails because the ALJ need not apply the VE's testimony with regard to functional limitations that the ALJ did not ultimately include in Plaintiff's RFC.

*Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Plaintiff asserts that the ALJ "failed to comply with this standard" because the ALJ only gave Dr. O'Brien's opinion "little weight" when Dr. O'Brien's opinion was consistent with the record and the ALJ (1) failed to cite to any evidence that would contradict Dr. O'Brien's opinion and (2) did not discuss the § 1527(c) factors. (*See* docket no. 10 at 4-7; docket no. 16 at 2.) Defendant argues that the ALJ did not err because her decision to give little weight to Dr. O'Brien's opinions was reasonable where (1) Dr. O'Brien's statements finding Plaintiff "disabled" are an issue reserved for the commissioner and (2) as the ALJ noted, Dr. O'Brien's opinions were "inconsistent with the record medical evidence as well as Plaintiff's hearing testimony and [were] apparently based on Plaintiff's subjective symptoms rather than her actual abilities." (Docket no. 14 at 16.)

As Plaintiff notes, on April 7, 2011, Dr. O'Brien filled out a Physical RFC questionnaire for Plaintiff and opined that Plaintiff could sit for one hour at a time and stand for approximately 30 minutes. (TR 400.) He noted that Plaintiff could sit, stand, or walk for about four hours in an eight-hour day but that she must be able to sit and stand at will. (TR 401.) Dr. O'Brien opined that Plaintiff would need to take unscheduled breaks throughout the day and that she should never lift more than 10 pounds. (TR 401.) He further opined that she could rarely twist, stoop, crouch, climb ladders, or climb stairs and that she had significant limitations with reaching, handling, or fingering. (TR 402.) He noted that Plaintiff could use her right hand 90% of the time to grasp, turn, and twist objects and to perform fine manipulations; he noted that she could only use her left hand 10% of the time to perform the same functions. Dr. O'Brien then opined that Plaintiff would have good days and bad days but that she would miss more than four days of work each month due to her conditions. (TR 402.)

Also as Plaintiff notes, the ALJ's RFC for Plaintiff is generally consistent with Dr. O'Brien's restrictions. (*See* docket no. 10 at 12-13 (comparing TR 24-25 with TR 400-402).) Plaintiff argues,

however, that when the ALJ gave "little weight" to Dr. O'Brien's opinions, she chose to ignore (without providing good reason) his opinion that Plaintiff would need unscheduled rest breaks, his opinion that the severity of Plaintiff's pain would frequently interfere with her attention and concentration, and his finding on November 24, 2009, that Plaintiff would only be able to work 20 hours per week. (*See id.* at 13.)

After a particularly thorough discussion of the medical evidence of record, the ALJ discussed Dr. O'Brien's opinions. (*See* TR 25-30.) Interestingly, the ALJ addressed Dr. O'Brien's 2009 and 2010 opinions separately from the opinions contained in his 2011 Functional Capacity assessment. (*See* TR 29-30.) It appears that the ALJ did this because several of the Dr. O'Brien's opinions from 2009 and 2010 contained statements regarding Plaintiff's ability to work because she was "disabled." As the ALJ noted, and as Defendant argues, such an opinion is reserved to the commissioner and, therefore, Dr. O'Brien's opinions with regard to Plaintiff's disability are not entitled to controlling weight. But the ALJ was clear with regard to her ultimate finding related to the 2009 and 2010 opinions: she found that the determination of disability was reserved to the commissioner, but she separately found that "the medical evidence of record does not support Dr. O'Brien's opinion that the claimant was unable to work more than 20 hours per week." (TR 30.) The ALJ then discussed Dr. O'Brien's April 2011 Functional Assessment. As noted, the ALJ's RFC finding was generally consistent with Dr. O'Brien's opinions with the exception of the ALJ failing to include a need for unscheduled breaks and a limitation in Plaintiff's ability to concentrate because of her pain. In affording Dr. O'Brien's April 2011 opinions "little weight," the ALJ noted that his opinions were "inconsistent with the medical evidence of record and the claimant's testimony at the hearing." (TR 30.) The ALJ also noted that his opinions "appear to be based on the claimant's subjective symptoms, rather than her actual abilities." (TR 30.)

The ALJ meticulously detailed Plaintiff's medical record, including the contradictions therein related to Plaintiff's allegations. (*See* TR 25-29 (stating, for example, that despite Plaintiff's peripheral neuropathy and the accompanying pain and neurological symptoms, she "frequently presented with no neurological deficits, normal strength and tone, full deep tendon reflexes, a normal gait, and normal sensation").) And while the ALJ did not discuss the factors listed in Section 1527(c), the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). That is, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). To the contrary, an ALJ's failure to discuss the factors of Section 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)). With regard to her decision to afford less than controlling weight to Dr. O'Brien's opinions, the undersigned finds that the ALJ provided good reason for her decision, despite her failure to discuss the Section 1527 factors. Therefore, the ALJ's decision should be affirmed, even if the Court would decide the matter differently, and even though substantial evidence also supports the opposite conclusion.

**VI. CONCLUSION**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 10) should be DENIED and Defendant's Motion for Summary Judgment (docket no. 14) should be GRANTED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 12, 2013        s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 12, 2013         <u>s/ Lisa C. Bartlett</u>
                                             Case Manager